DeMaria Law Firm, APC
Anthony N. DeMaria, #177894
*ADemaria@demarialawfirm.com*
1684 W. Shaw Ave. Suite 101
Fresno, California 93711
Telephone: (559) 206-2410
Facsimile: (559) 570-0126

Attorneys for Defendant, COUNTY OF KERN

UNITED STATES DISTRICT COURT

EATERN DISTRICT – FRESNO DIVISION

| | |
|---|---|
| JOHN J.W. DOE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF KERN, a public entity; DOES 1 through 100, individuals ,<br><br>Defendants. | Case No. [Unassigned]<br><br>**NOTICE OF REMOVAL OF ACTION FOR FEDERAL QUESTION UNDER U.S.C. SECTION 1441 AND DEMAND FOR JURY TRIAL**<br><br>**DEFENDANT'S DEMAND FOR A JURY TRIAL** |

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure Rule Defendant, COUNTY OF KERN, by and through the undersigned counsel, hereby remove this action to federal court, in the United States District Court for the Eastern District of California, based upon federal questions brought by Plaintiff, JOHN J.W. DOE; an individual.

1. The Complaint pleads two causes of actions/claims which are federal questions, with original federal jurisdiction matter. The Complaint in this case, attached hereto as Exhibit "A", asserts two Federal causes of action: the Eighth Cause of Action (claim) for a violation of Federal Statute 42 U.S.C. § 1983 against the individual defendants, and the Ninth Cause of Action (claim) for a violation of Federal Statute 42 U.S.C. § 1983 (*Monell*) against Defendant COUNTY OF KERN.

2. Both of these causes of action (claims) in the Complaint are federal questions. As such, Removal of this Complaint from the Superior Court of the State of California, County of Kern, is

proper under 28 U.S.C. § 1441(c)(1)(A), for claims and causes of action based upon federal laws and the federal Constitution.

3. The County of Kern is within the United States District Court, Eastern District of California, so Removal is properly made under 28 U.S.C. § 1446.

4. The Complaint was served on Defendant COUNTY OF KERN by Personal Service on October 21, 2026, making this Removal timely and proper under 28 U.S.C. § 1446(b)(1).

5. All filed documents in the possession of removing parties to this case are attached hereto as: Exhibit "A", the operative Complaint; and Exhibit "B", all other pleadings.

6. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be filed with the Superior Court of California, County of Kern.

**DEFENDANT DEMANDS A JURY TRIAL.**

Dated: November 20, 2026

DeMaria Law Firm, APC

By: ______________________
Anthony N. DeMaria
Attorneys for Defendant, COUNTY OF KERN

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of Kern
By: Javen Silva
Deputy Clerk
10/13/26 1:25 PM

Jordan M. Jones, Esq. SBN 344487
STINAR LANNEN, PLLC
360 E 2nd St., Suite 820
Los Angeles, CA 90012
Tel: (213) 993-0360
Email: Jordan@StinarLannenLaw.com
*Counsel for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA
KERN COUNTY

JOHN J.W. DOE, an individual,

PLAINTIFF,

vs.

COUNTY OF KERN, a public entity; DOES 1-100, individuals,

DEFENDANTS.

Case No.: 26CUB04056

**COMPLAINT FOR DAMAGES**

1. **SEXUAL ASSAULT**
2. **SEXUAL BATTERY**
3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
4. **VIOLATION OF BANE ACT (CIVIL CODE 52.1)**
5. **NEGLIGENCE**
6. **NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**
7. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
8. **VIOLATION OF 42 U.S.C. § 1983 (AGAINST INDIVIDUAL DEFENDANTS)**
9. **MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (*MONELL*) (AGAINST COUNTY OF KERN)**
10. **FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (GOV'T CODE § 845.6) (AGAINST COUNTY OF KERN AND INDIVIDUAL DEFENDANTS)**
11. **DECLARATORY RELIEF AS APPLIED (UNCONSTITUTIONALITY OF CAL. GOV. CODE § 844.6(a)(2) (Against COUNTY)**

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, JOHN J.W. DOE (individual) (herein after referred to as "PLAINTIFF"); for causes of action against Defendants COUNTY OF KERN, a public entity (hereinafter "COUNTY"); and the following individuals who were employed by the County at all relevant times: DOES 1-100, individuals, inclusive, (herein after referred to as "INDIVIDUAL DEFENDANTS" and the terms "DEFENDANTS" shall reference all Defendants, including DOES 1-100 and COUNTY, its agents and/or employees), alleges as follows:

## INTRODUCTION

1. This case arises from COUNTY's longstanding, facility-wide failure to protect vulnerable minors in its juvenile detention system from foreseeable sexual misconduct by COUNTY employees acting under color of law. PLAINTIFF does not allege isolated misconduct by an unrelated employee; he alleges that, across approximately 2001 through 2004, he was abused at a COUNTY-operated facility under materially similar institutional conditions: staff isolation of minors, lack of meaningful supervision, ignored complaints and medical requests, retaliation and intimidation, unsafe reporting channels, and failure to investigate or discipline obvious red flags. Those conditions put COUNTY, including its supervisors and final policymakers, on actual or constructive notice that its training, supervision, reporting, medical-care, and anti-retaliation practices were inadequate and that PLAINTIFF and other minor detainees faced a substantial risk of sexual abuse and denial of care.

2. This egregious conduct violated PLAINTIFF's civil liberties, and state constitutional rights as well as Penal Code §§ 243.4(a) and 289.6, which make it unlawful to engage in sexual misconduct with an inmate. The misconduct occurred under color of authority by actors, employees and/or agents of COUNTY'S Probation Department while PLAINTIFF was detained and housed at a juvenile facility owned and/or operated by COUNTY'S Probation Department.

3. The INDIVIDUAL DEFENDANTS used their positions of trust and authority to repeatedly sexually abuse minor inmates in their custody, care, control, and direction by engaging in various brutal and sexual acts ranging from threats and use of pepper spray to inappropriate touching and/or aggressive groping to oral, vaginal or anal sex, and penetration. If

PLAINTIFF and other similarly situated failed to comply with the demands of the INDIVIDUAL DEFENDANTS, they were punished by having their privileges taken away and/or physically threatened with abuse, or loss of further rights and privileges.

4. These abuses were committed to satisfy the INDIVIDUAL DEFENDANTS' own control, power, and sexual desires at the expense of defenseless minors, including PLAINTIFF. COUNTY knew or should have known of the abuses, red flags, and conditions alleged herein through its employees, supervisors, probation personnel, mandated reporters, and final policymakers during PLAINTIFF's confinement at COUNTY facilities. Rather than taking adequate corrective and preventive action, COUNTY ratified, tolerated, and endorsed the INDIVIDUAL DEFENDANTS' behavior through acts and omissions, including the failure to investigate complaints and red flags, failure to discipline or restrict known problem staff, failure to provide safe reporting channels, failure to summon medical or mental health care, and failure to enforce policies designed to prevent staff sexual misconduct, thereby communicating to PLAINTIFF and other similarly situated minors that such abuse, harassment, and retaliation would be accepted and concealed by COUNTY.

## PARTIES

5. PLAINTIFF and those similarly situated were at all relevant times herein residents of the State of California. Due to PLAINTIFF being a victim of childhood sexual abuse and harassment, his identity has been protected in this public filing due to the sensitive and personal nature of the allegations under *Penal Code* § 293 and the fact that he was a victim of sexual assault as a minor.

6. Defendant COUNTY is, and at all relevant times herein, is a government entity located in the County of Kern, State of California. COUNTY was and is organized under the laws of the State of California. COUNTY was responsible for the supervising, hiring, retention, and training of INDIVIDUAL DEFENDANTS. At all relevant times, COUNTY and INDIVIDUAL DEFENDANTS had minor residents under its care, custody, and control that were confined to its premises including PLAINTIFF.

7. One department that makes up Defendant COUNTY'S government is the Youth

Services Probation Department. PLAINTIFF is informed and therefore believe, that its main offices are located at 2005 Ridge Road, Bakersville, CA 93305. Defendant COUNTY'S Youth Services Probation Department operates youth detention camps owned and/or operated by Defendant COUNTY, which exclusively housed youth in several facilities.

8. James G. Bowles Youth Detention Center ("JGBYDC") is a secure facility for minors located at 1831 Ridge Road, Bakersfield, CA 93385, which is owned and operated by COUNTY.

9. INDIVIDUAL DEFENDANTS at all relevant times herein were individuals residing in the County of Kern, acting under the authority and in the course and scope of their employment with Defendant COUNTY at the time the improper and unlawful conduct occurred. PLAINTIFF was not told these officer's full names, and not aware if told first or last names, or the proper spelling. The full true legal names of INDIVIDUAL DEFENDANTS are readily unavailable and unknown to PLAINTIFF. When the true full names of INDIVIDUAL DEFENDANTS are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

10. Defendants DOES 1-20, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names and capacities of DOES 1-20. DOES 1-20 are individuals who were in a supervisory, employee, and/or agent relationship or role that controlled, operated, or supervised the youth facility located in Kern County, California. DOES 1-20 were responsible for the supervising, hiring, retention, and training of DOES 51-100. DOES 1-20 were employees, agents, principals, and/or contractors of COUNTY. When the true names of DOES 1-20 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

11. Defendants DOES 21-50, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names and capacities of DOES 21-50. DOES 21-50 are individuals, corporations, and/or entities that operated, controlled, or supervised the youth facilities in Kern County, California. DOES 21-50 were responsible for the hiring, retention, and training of DOES 51-100. DOES 21-50 were employees, agents, principals and/or

contractors of COUNTY. When the true names of DOES 21-50 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

12. Defendants DOES 51-100, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names of DOES 51-100 who are individuals sued by such fictitious names. DOES 51-100 were employees, agents, principals and/or contractors of COUNTY and DOES 1-50 while working at the facility in Kern County, California. When the true names of DOES 51-100 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

13. At all times mentioned herein, DOES 51-100 were adult guards, counselors, supervisors, mentors, advisors, and employees of COUNTY and DOES 1-50. DOES 51-100 acting as employees, agents, and/or servants, were under Defendant COUNTY and DOES 1-50's control and/or supervision. Upon information and belief, DOES 51-100 were employed as guards, counselors, staff members, and/or supervisors of minor residents while at COUNTY and DOES 1-50's facility. As their employees, COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFF to be of high ethical and moral repute, and to be in good standing with COUNTY and DOES 1-50 and the public in general. In this capacity, DOES 51-100 oversaw, supervised, mentored and advised residents confined to their custody regarding personal issues, daily needs, their future, and general emotional and psychological issues. COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFF to be highly qualified guards, counselors, supervisors, mentors, and advisors who could and would assist PLAINTIFF with daily living needs as well as working through personal issues he faced, especially in light of the fact PLAINTIFF was a minor in custody. Inherent in this representation was the understanding that DOES 51-100 were persons of high ethical and moral standing, selected to provide supervision, leadership, guidance, mentoring, and advising to all resident inmates, including PLAINTIFF. PLAINTIFF reasonably assumed that DOES 51-100 were persons worthy of their trust.

14. PLAINTIFF is informed and believes, and on that basis, alleges, that at all times mentioned herein, there existed a unity of interest and ownership among DEFENDANTS, and

each of them, such that any individuality and separateness between DEFENDANTS, and each of them, ceased to exist. DEFENDANTS, and each of them, were the successors-in-interest and/or alter egos of the other Defendants, and each of them in that they purchased, controlled, dominated, and operated each other without and separate identity, observation of formalities, or other manner of division.

15. PLAINTIFF is informed and believes that and thereon alleges that all DEFENDANTS including INDIVIDUAL DEFENDANTS, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint ventures, co-tortfeasors and employees of all other Defendants, and that all acts alleged occurred within the course and scope of the agency, employment, partnership, joint venture, conspiracy and/or enterprise, and their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in contradiction with the other allegations.

16. With respect to state law cases of action only, PLAINTIFF alleges that COUNTY is vicariously liable for actions and omissions of INDIVIDUAL DEFENDANTS within the scope of employment to the extent permitted by California law. PLAINTIFF does not seek to impose municipal liability under 42 U.S.C. § 1983 on a respondeat superior theory; the federal municipal-liability claim against COUNTY is based on COUNTY's own policies, customs, ratification, deliberate indifference, and failures to train, supervise, investigate, report, and summon care, as alleged in the Ninth Cause of Action.

17. All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further discovery. Pursuant to *Code of Civil Procedure* section 340.1, PLAINTIFF brings this Complaint against DEFENDANTS, and each of them, to recover damages suffered by PLAINTIFF as a result of childhood sexual abuse and other relief available at law and in equity.

18. Pursuant to Code of Civil Procedure section 340.1, subdivision (q), and Government Code section 905, subdivision (m), as amended by Assembly Bill 218, PLAINTIFF's claims for damages arising from childhood sexual assault are expressly exempt

from the claim-presentation requirements of the Government Claims Act (Gov. Code, §§ 900 *et seq*. and 910 *et seq*.) and are not required to be presented to the COUNTY prior to commencement of this action. Assembly Bill 218 further revived all such claims regardless of when the abuse occurred and notwithstanding the prior expiration of any statute of limitations or claim-presentation deadline.

19. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

20. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court. Accordingly, this Court has jurisdiction over the case at bar.

21. Venue is proper in Superior Court for the County of Kern because the subject incidents upon which this Complaint is based occurred in Kern County, California within Kern County. Further, Defendant COUNTY exists and operates within the County of Kern.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFF

22. At all times material hereto, PLAINTIFF was a minor in the direct custody, care, supervision, and control of DEFENDANTS, inclusive, due to physical confinement at JGBYDC.

23. PLAINTIFF's confinement at JGBYDC was court-ordered and mandatory, and the duration and nature of this confinement depended on compliance with the orders, demands, and directives of DEFENDANTS, and each of them.

24. At all times herein referenced, DEFENDANTS, were in the position of authority, trust, influence, and persuasion over PLAINTIFF. INDIVIDUAL DEFENDANTS were agents and/or employees of COUNTY and DOES 1-50, who maintained a special relationship with them to assure them reasonable health, safety, and freedom from undue restraint and abuse. INDIVIDUAL DEFENDANTS' abuse of PLAINTIFF was under the color of authority. For state law purposes, COUNTY is liable for the acts, omissions, and conduct of its employees to the extent permitted by *Government Code* § 815.2.

25. As set forth herein, DEFENDANTS, and each of them, have failed to uphold

numerous mandatory duties imposed upon them by state and federal law, and by written policies and procedures applicable to DEFENDANTS, including but not limited to the following:

a. Duty to reasonable care to protect wards of the state from known or foreseeable dangers (*Government Code* §§ 820, 815.2);

b. Duty to use reasonable care to protect wards of the state from known or foreseeable dangers (Government Code §§ 820, 815.2);

c. Duty to refrain from taking official action that contradicts the provisions of Article 1, section 28(c) of California Constitution;

d. Duty to protect wards, and provide adequate supervision (Government Code § 815.6);

e. Duty to ensure that any direction given to wards is lawful, and that adults act fairly, responsibly and respectfully towards wards;

f. Duty to properly train guards, counselors, supervisors, security and staff members so that they are aware of their individual responsibility for creating and maintaining a safe environment;

g. Duty to supervise staff and wards and enforce rules and regulations prescribed for facilities such as COUNTY and DOES 1-50's facilities, as is reasonably necessary to maintain order, protect property, or protect the health and safety of staff and wards or to maintain proper and appropriate conditions conducive to safe living.

h. Duty to exercise careful supervision of the moral conditions at a confined resident program;

i. Duty to properly monitor wards, prevent or correct harmful situations or call for help with the situation is beyond their control;

j. Duty to ensure that personnel are actually on hand and supervising wards;

k. Duty to provide enough supervision to wards;

l. Duty to supervise diligently;

m. Duty to act promptly and diligently and not ignore or minimize problems;

n. Duty to refrain from violating PLAINTIFF's right to protection from bodily restraint or harm, from personal insult, from defamation, and from injury to their personal relations (*Civil Code* § 43);

o. Duty to abstain from injuring the person or property of PLAINTIFF, or infringing upon any of his rights (*Civil Code* § 1708); and

p. Duty to report suspected incidents of child abuse and, more specifically, childhood sexual abuse (*Penal Code* §§ 11166, 11167);

q. DEFENDANTS and each of them had and have a duty to protect wards, including PLAINTIFF. DEFENDANTS were required, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of PLAINTIFF and others.

26. COUNTY lodged with INDIVIDUAL DEFENDANTS, the color of authority, by which they were able to influence, direct, and abuse Plaintiff and others, and to act illegally, unreasonably, and without respect for the person and safety of PLAINTIFF.

27. COUNTY and DOES 1- 50 had a duty to and failed to adequately train and supervise all guards, advisors, counselors, mentors, security and staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate conduct by other members of the staff, specifically including DOES 51-100, with children.

28. COUNTY and DOES 1-50 had a duty to and failed to enact and enforce rules and regulations prescribed for facilities such as their school and facilities where wards of the state were confined without the ability to leave on their own free will and where it was necessary to execute reasonable control over wards to protect their health and safety.

29. COUNTY and DOES 1-50 were required to and failed to exercise careful supervision of the moral conditions at their school and facilities and provide reasonable supervision.

30. As minors in custody, the COUNTY and DOES 1-50 as the employers and supervisors of DOES 51-100, knew that they were in direct contact with young children and stood *in loco parentis* regarding PLAINTIFF while he was confined, having been entrusted to

COUNTY and DOES 1-50 for their safety, protection, and well-being, while in reality PLAINTIFF was thrown into the den of unwanted sexual abuse.

31. PLAINTIFF further contends that he was targeted after being isolated and controlled by means of the special relationship between guards and inmates as well as the *in loco parentis* relationship established through juvenile detention. INDIVIDUAL DEFENDANTS, through grooming and isolated confinement of PLAINTIFF and others similarly situated, exploited their position of trust and authority resulting in the sexual abuse of minors in violation of *Penal Code* §§ 261.5, 243.4(a) and 289.6.

32. PLAINTIFF is informed and believes and thereon alleges that COUNTY, and its employees and/or agents knew or should have known that INDIVIDUAL DEFENDANTS had engaged in unlawful sexual abusive and harassing conduct in the past, and/or were continuing to engage in such conduct. DEFENDANTS had a duty to disclose these facts to PLAINTIFF and others, but negligently, and/or intentionally suppressed, concealed, and/or failed to disclose this information. The duty to disclose this information arose from the special, trusting, confidential, fiduciary relationship between the DEFENDANTS and PLAINTIFF.

33. Based upon information and belief, and alleged thereon, PLAINTIFF contends there was no formal or informal grievance process relating to the conditions of confinement in which he could make complaints about the sexual abuse and harassment by INDIVIDUAL DEFENDANTS. Moreover, to the extent there was a process, PLAINTIFF at all times was unaware of the formal process and DEFENDANTS failed to advise PLAINTIFF of his right to complain about the sexual misconduct without fear and/or threat of retaliation or other forms of deterrence, despite the existence of a mandatory duty to do so. Thus, PLAINTIFF's and others' grievances fell on deaf ears and were covered up. Further, to the extent there was a process, PLAINTIFF at all times was coerced and threatened not to report the sexual abuse through physical and verbal acts of intimidation, actual and/or constructive retaliation and/or other forms of deterrence. Due to DEFENDANTS' failure to discharge their mandatory duties, complaints PLAINTIFF made were buried and/or fell on deaf ears and ignored.

34. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS

escaped liability and discipline for years based on DEFENDANTS' failure to properly and efficiently investigate the allegations of sexual abuse. Moreover, DEFENDANTS were not disciplined, including by termination, due to investigators violating the statute of limitations for investigators of peace officers not taking more than a year to complete their report.

**THE COUNTY'S VICARIOUS LIABILITY FOR ACTS OF ITS EMPLOYEES**

35. PLAINTIFF is informed and believes and thereon alleges that at all times herein described, INDIVIDUAL DEFENDANTS, were agents, employees, and/or servants of COUNTY and acted under the color of authority where the physical and sexual abuse and misconduct took place. COUNTY is vicariously liable for torts committed by INDIVIDUAL DEFENDANTS within the scope of their employment under *Government Code* section 815.2.

36. To the extent permitted by California law, COUNTY is liable for acts and/or omissions to act by INDIVIDUAL DEFENDANTS within the scope of employment because, as alleged herein, on-duty employees misused their authority delegated by COUNTY by sexually abusing PLAINTIFF and others detained in COUNTY's facilities. (*See* generally *Mary M. v. City of Los Angeles*, (1991) 54 Cal.3rd 202.)

**EQUITABLE TOLLING, ESTOPPEL, DURESS, AND DELAYED DISCOVERY**

37. PLAINTIFF's claims are timely filed, or, at minimum, any applicable limitations period was tolled and DEFENDANTS are equitably estopped from asserting a limitations defense. PLAINTIFF does not rely solely on minority, confinement, or the fact of sexual assault; he alleges that COUNTY, through its employees, supervisors, probation personnel, mandated reporters, and final policymakers, used, tolerated, ratified, and benefited from threats, retaliation, suppression of complaints, the destruction or disregard of written complaints, denial of medical requests, absence of a safe reporting process, concealment of staff identities, and concealment of COUNTY customs to prevent PLAINTIFF from discovering the actionable role of COUNTY's policies and practices and from filing suit sooner. As to the federal municipal-liability claim, PLAINTIFF did not know, and could not reasonably have known, the facts showing COUNTY's own deliberate-indifference policy, custom, and moving-force causation

until within the applicable limitations period as tolled or extended by delayed discovery, estoppel, duress, and fraudulent concealment.

38. Under the delayed discovery rule, PLAINTIFF did not discover, and in the exercise of reasonable diligence, could not have discovered the facts constituting COUNTY's wrongful conduct, the causal relationship between that conduct and their injuries, the actionable nature of COUNTY's institutional failures, including its policies and customs of deliberate indifference to sexual abuse of minors, and the wrongful nature of DEFENDANTS' acts and omissions until a date within the applicable limitations period as extended by the foregoing tolling and estoppel doctrines. PLAINTIFF's delayed discovery was reasonably caused and prolonged by the trauma of the sexual abuse, their dependence on COUNTY staff for basic needs and safety at the juvenile detention facility, the complex power dynamics of incarceration, COUNTY's concealment and retaliation as alleged herein, and COUNTY's suppression of information showing that the abuse was enabled by facility-wide policies, customs, and practices rather than by isolated misconduct. PLAINTIFF did not merely lack legal sophistication; he lacked access to the facts necessary to connect his individual abuse to COUNTY's institutional practices because the relevant information was within COUNTY's control, including complaint slips, medical requests, HIV-testing circumstances, staff assignments, supervision logs, grievance records, medical records, training materials, disciplinary records, and internal reports. PLAINTIFF only recently discovered the actionable nature of his injuries and COUNTY's institutional role when, through public media, legal proceedings, and the emergence of other survivors, he learned that similar custodial sexual abuse occurred and that other survivors were seeking justice for abuses suffered at COUNTY juvenile detention facilities. Prior to that time, PLAINTIFF was made to believe that the sexual abuse, intimidation, denial of care, and retaliation he experienced were part of state or county sanctioned punishment and that the resulting emotional, mental, and physical harms were not legitimate injuries but merely a function of his incarceration. Nor could he appreciate COUNTY's systemic role in enabling the abuse or have reason to know that COUNTY maintained customs and policies of failing to train, supervise, or monitor staff, or of suppressing complaints of sexual abuse.

39. PLAINTIFF's claims are further equitably tolled by the DEFENDANTS' actions undertaken specifically to fraudulently conceal the fact that PLAINTIFF's rights were being violated by non-peace officer COUNTY employees and agents in custodial, medical, kitchen, maintenance, stockroom, and other institutional roles at the facility, including but not limited to those employees' misrepresentations that their conduct was necessary, appropriate, or authorized; their threats of negative consequences and actual retaliation if PLAINTIFF reported or refused or attempted to report or refuse such conduct; their refusal to allow PLAINTIFF to document or meaningfully report what had occurred; and the actions taken by supervisors to suppress, minimize, or discredit complaints so that this misconduct would not be properly investigated or prevented and complaints would not be sustained, as described more fully herein.

40. PLAINTIFF contends that DEFENDANTS are equitably estopped from asserting any statute of limitations defense because DEFENDANTS engaged in, tolerated, and failed to prevent retaliatory actions against inmates who reported COUNTY staff for sexual misconduct, thereby deterring PLAINTIFF from timely reporting and pursuing his claims. PLAINTIFF incorporates by reference all allegations herein describing the pervasive and well-known culture and pattern of retaliation, the constant threat of such retaliation, and COUNTY's institutional practices that made it unsafe for inmates to bring complaints or claims regarding staff sexual abuse. COUNTY had actual or constructive notice of the underlying misconduct and of the need to preserve and investigate claims before expiration of any limitations period because COUNTY employees received or observed complaint slips, requests to speak with probation personnel, medical requests, HIV testing circumstances, visible red flags of sexual abuse, widespread detainee knowledge of problem staff, and policy-violating conduct by staff, yet suppressed, ignored, or failed to act upon that information. The same concealment, misrepresentations, and retaliation that induced PLAINTIFF's delayed understanding that he was injured and delayed reporting of his injuries should estop DEFENDANTS from benefiting from any limitations period. DEFENDANTS actively concealed the sexual abuse and the institutional conditions that enabled it. The culture at the facilities normalized physical abuse and coercion by staff and

systemically instilled fear of retribution in detainees who wanted to get help to make the abuse stop but were provided with no safe means to do so.

41. PLAINTIFF's claims are also equitably tolled because duress prevented him from coming forward sooner. Following his release from juvenile detention, PLAINTIFF faced significant barriers to accessing legal resources and pursuing claims, including the well-understood lasting psychological effects of the abuse. PLAINTIFF further feared retaliation from the COUNTY, having experienced its culture of intimidation and suppression of complaints firsthand. Only recently, through the support of understanding that the sexual abuse he experienced was not state-approved criminal punishment but in fact illegal and a crime, and through improved circumstances in his personal lives like the development of their own support systems, improved access to health care, and improved housing stability, has PLAINTIFF felt safe and secure enough to take the psychologically destabilizing acts of coming forward. Amanda Goad, a senior staff attorney at the American Civil Liberties Union of South California stated in response to the failures to comply with federal standards to combat prison sexual abuse, that "there is this perception that sexual assault is just part of the penalty for people who are incarcerated."[1] PLAINTIFF was made to believe that much for the entirety of his detention and continued to do so well into adulthood.

42. DEFENDANTS actively concealed the sexual abuse and the institutional conditions that enabled it. DEFENDANTS' active concealment was further effectuated by the absence of any formal or informal grievance process through which PLAINTIFF could report the sexual abuse without fear of retaliation and actually experiencing retaliation. DEFENDANTS' failed to advise PLAINTIFF of any right to complain about the sexual misconduct in a manner that had a modicum of safety and reliability or effectuate the same.

43. As a direct result of the sexual abuse he suffered, PLAINTIFF experienced severe and lasting psychological trauma. PLAINTIFF was a minor at the time of the assault and was sexually assaulted by law enforcement officials acting with the authority of the government,

---

[1] https://www.latimes.com/local/lanow/la-me-lasd-prea-20180401-story.html

compounding the traumatic impact, distrust of authority, and distrust of the safety of disclosing sexual abuse to individuals and institutions who claim they are safe spaces to report. PLAINTIFF's psychological conditions, including denial, shame, embarrassment, fear of retaliation, and distrust of authority figures—reinforced by their abusers' threatening conduct and other officers' conscious refusal to intervene or active protection of those abusers—rendered PLAINTIFF unable to understand that the extreme discomfort he was experiencing throughout this sexual abuse was not just another manifestation of the extreme discomfort of the circumstances of the punishment of his state-sanctioned incarceration but actionable sexual abuse. This disabled him from pursuing claims during the limitations period.

44. PLAINTIFF did not discover, and could not reasonably have been expected to discover, his injuries or the actionable nature of COUNTY's institutional failures—including its policies and customs of deliberate indifference to sexual abuse of minors—until within the last year when PLAINTIFF first became aware of legal proceedings and public disclosures relating to institutional sexual abuse at California juvenile detention facilities and learned that others were seeking justice for abuses suffered there. Prior to that time, PLAINTIFF understood his detention caused him tremendous stress, but did not understand COUNTY's systemic role in enabling the abuse, nor did PLAINTIFF have reason to know that the COUNTY maintained customs and policies of failing to train, supervise, or monitor staff, or of suppressing complaints of sexual abuse. Moreover, PLAINTIFF was instructed to believe that he did not have personal rights to the safety and sanctity of his own body or sexual organs because he was an incarcerated minor who deserved punishment from the government however the government saw fit.

45. Following his release from juvenile detention, PLAINTIFF faced significant barriers to accessing legal resources and pursuing claims, including the lasting psychological effects of the abuse, his young age at the time of the assault, distrust of authority figures and institutions engendered by the abuse, and lack of knowledge of his legal rights. PLAINTIFF further feared retaliation, having experienced the COUNTY's culture of intimidation and suppression of complaints firsthand as a child detainee who was sexually assaulted by a staff member with authority while in COUNTY custody. PLAINTIFF was threatened not to tell

anyone about what was done to him and lived in constant fear of what would happen to him if he disclosed his experiences throughout adulthood.

**KERN COUNTY PROBATION DEPARTMENT**

**PREA COMFLIANCE: POLICIES AND PROCEDURES**

46. Congress enacted the Prison Rape Elimination Act in 2003 (PREA). The PREA acknowledges that juveniles are "incapable of giving consent because of his or her youth or his or her temporary or permanent physical incapacity."[2]

47. As defined under the PREA, the term "prison" means "any confinement facility of a Federal, State, or local government, whether administered by such government or by a private organization on behalf of such government, and includes— (A) any local jail or police lockup; and (B) any juvenile facility used for the custody or care of juvenile inmates."[3]

48. One purpose of PREA was to establish "national standards for the detection, prevention, reduction, and punishment" of sexual assaults occurring in prisons nationwide. In enacting PREA, Congress made the following findings:[4]

- "Members of the public and government officials are largely unaware of the **epidemic character of prison rape and the day-to-day horror experience by victimized inmates."**
- **"The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution."**
- "[E]xperts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison," and "[y]oung first-time offenders are at increased risk of sexual victimization."
- "Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults;" and
- "Inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault—if they receive treatment at all."

---

[2] https://www.congress.gov/108/plaws/publ79/PLAW-108publ79.pdf
[3] *Id.* at Sec. 10(7).
[4] *Id.* at Sec. 2.

49. The PREA's national standards included creating a system for reporting incidents of sexual assault to ensure the confidentiality of complaints, protect them from retaliation, and assure the impartial resolution of such complaints. A system for data collection, reporting, and investigation of prison staff sexual misconduct was recommended along with specific training of correctional staff "sufficient to ensure that they understand and appreciate the significance of prison rape and the necessity of its eradication."

50. One of the several explicit purposes of the PREA was to "make the prevention of prison rape a top priority in each prison system" and "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." Operative official standards for juvenile facilities are included within 28 C.F.R. §115 (May 17, 2012).

51. COUNTY maintains Detention Center Administration Manuals that reflect its policies and procedures regarding PREA compliance and the protection of juvenile detainees from staff-inflicted sexual abuse for each of its facilities. These include:

a. ensuring a "sufficient number of supervisory level staff to ensure adequate supervision of all staff members" *see* JGBYDC Administration Manual, Title 15, Article 3, Section 1321 – Policy 1205 - STAFFING;

b. "Strip searches and body cavity searches require justification and administrative approval;" "Strip searches shall be conducted only with prior administrative approval, and only upon reasonable suspicion a youth is in possession of a weapon or contraband, as provided in Penal Code Section 4030. The Duty Supervisor must have specific reason to believe the youth is concealing a weapon or contraband before he seeks approval. Documentation is required to substantiate a strip search;" "Strip search is defined as a search which requires a person to remove or arrange some or all his/her clothing to permit visual inspection of the underclothing, breasts, buttocks, and genitalia. Any time a strip search is required two staff of the same gender as the youth

shall be present" *see* Title 15, Article 5, Section 1360 – Policy 1457 - SEARCHES; and

c. "When an issue or complaint is initiated by a youth regarding their care and treatment at the facility, and the youth expresses a desire to seek resolution through the grievance process, *the youth should first attempt to resolve the situation on their own,* as noted in the Youth Handbook." Title 15, Article 5, Section 1361, Policy 1650 – GRIEVANCE (emphasis added).

52. The United States Department of Justice published a Special Report in March 2023 titled "Substantiated Incidents of Sexual Victimization Reported by Juvenile Justice Authorities 2013-2018."[5] The results were inherently limited given they included only those instances of detainees who not only reported their sexual abuse but whose reports were then properly documented, investigated, and produced to the federal government. The DOJ report identified 511 perpetrators of staff-on-youth sexual victimization in juvenile justice facilities. Approximately 67% of incidents of staff-on-youth sexual victimization occurred in the detainee's cell, a common area, or a program area. The sexual abuse occurred at all times of the day and night. Only 50% of the youth who successfully reported their sexual victimization from staff members were actually provided with any counseling or mental health treatment, and only 20% were given a medical examination. The report identified a staggering 338 staff perpetrators, 51 of whom were responsible for assaulting more than one individual juvenile detainee. 90% of these staff perpetrators were full-time employees. Only 8% of these staff sexual assailants were reprimanded or disciplined.

53. As further alleged below, Defendant COUNTY has failed to implement, enforce, or otherwise adhere to the procedures necessary to protect inmates under their own guidelines and PREA national standards. This failure has allowed numerous inmates to be subjected to sexual abuse and assault by allowing unsupervised and untrained COUNTY employees to abuse PLAINTIFF with impunity.

---

[5] https://bjs.ojp.gov/library/publications/substantiated-incidents-sexual-victimization-reported-juvenile-justice

## IMMEDIATE MEDICAL NECESSITY
## FOR VICTIMS OF SEXUAL ASSAULT AND SEXUAL BATTERY

54. Victims of sexual assault and sexual battery undergo significant and multifaceted trauma necessitating immediate medical intervention. This imperative stems from the acute risks associated with physical injuries, from external bruising and lacerations to more severe internal injuries such as pelvic trauma and genital or anal injuries. Victims of sexual assault are at risk of unwarranted pregnancy, contracting sexually transmitted infections, including HIV,[6] hepatitis B, and other pathogens.[7] The standard of care in such circumstances requires timely forensic and medical evaluation, including Sexual Assault Response Team (SART) examinations, evidence preservation, pregnancy prevention measures, and prophylactic treatment protocols, all of which are time-sensitive and medically necessary.

55. The psychological trauma associated with sexual assault is profound, placing victims at immediate risk for Post-Traumatic Stress Disorder (PTSD), anxiety, depression, and other acute stress reactions. Immediate psychological evaluation and intervention are recommended to address these concerns, mitigate the onset of chronic mental health conditions, and facilitate coping strategies. Expert recommendations from psychiatry underscore the need for early psychological intervention to stabilize the victim and begin the process of psychological recovery.[8]

56. Immediate and comprehensive medical care serves a dual and indispensable function: addressing acute injuries while preventing the escalation of long-term physical and psychological harm. This includes, at a minimum, the administration of post-exposure prophylaxis (PEP) for HIV within the medically accepted window period, empiric treatment for other sexually transmitted infections, emergency contraception where appropriate, and thorough

---

[6] American College of Emergency Physicians, *Management of the Patient with the Complaint of Sexual Assault* (2020).
[7] World Health Organization, Clinical Management of Rape and Intimate Partner Violence Survivors (2020).
[8] Bragesjö, M., Larsson, K., Nordlund, L., Anderbro, T., Andersson, E., & Möller, A. (2020). Early Psychological Intervention After Rape: A Feasibility Study. *Frontiers* in Psychology, 11.

documentation of injuries for both clinical and forensic purposes. Concurrent mental health screening is equally critical, as it allows for the early identification of trauma responses and facilitates timely referral for ongoing therapeutic care. The failure to provide such care not only departs from established medical standards but foreseeably results in exacerbated injury, prolonged suffering, and significantly worsened prognoses for recovery.

57. INDIVIDUAL DEFENDANTS acting under color of law and within the course and scope of their employment with the COUNTY at JGBYDC, owed a non-delegable duty to protect incarcerated individuals from sexual abuse and to ensure that any victim of such abuse received immediate, adequate, and appropriate medical and psychological care. This duty is grounded not only in basic standards of decency and institutional policy, but also in well-established legal mandates, including the obligation to summon and provide necessary medical care to those in custody. DEFENDANTS willfully breached these duties. They not only perpetrated and/or permitted the very acts of sexual abuse they were charged with preventing, but further engaged in deliberate concealment—intimidating victims, suppressing reporting, and obstructing access to medical personnel. This calculated misconduct directly deprived PLAINTIFF of urgently needed medical and psychological treatment at the most critical juncture, thereby magnifying his injuries, compounding his trauma, and causing lasting and irreparable harm.

58. The immediacy of psychological assessment following sexual assault is not merely advisable—it is clinically indispensable. The period immediately following the assault constitutes a recognized window of acute neurobiological vulnerability, during which victims frequently experience shock, dissociation, impaired cognition, and heightened fear responses. Without timely intervention by trained mental health professionals, these acute reactions can consolidate into entrenched trauma pathways, substantially increasing the likelihood of chronic conditions such as Post-Traumatic Stress Disorder (PTSD), major depressive disorder, panic disorders, and suicidal ideation. Early psychological assessment is therefore essential to stabilize the victim, evaluate risk of self-harm, initiate trauma-informed care, and implement protective interventions designed to interrupt the progression from acute stress to chronic psychiatric injury.

The failure to provide such immediate assessment foreseeably and substantially increases the severity, duration, and permanence of psychological harm.

59. In custodial settings, this critical need for immediate (and consistent) psychological evaluations is foreseeably and systematically undermined by a pervasive fear of retaliation. Victims of sexual abuse are wholly dependent on correctional staff—including, in many cases, their abusers and those aligned with them—for their basic necessities, personal safety, and access to medical and mental health services. This coercive dynamic creates an environment in which reporting abuse, or even requesting psychological assistance, carries a credible and substantial risk of reprisal, including threats, intimidation, physical harm, disciplinary write-ups, loss of privileges, placement in isolation, or transfer to less favorable conditions. As a direct result, victims are effectively silenced at the very moment when psychological intervention is most critical.

60. DEFENDANTS knew, or at a minimum should have known, that such a culture of fear and retaliation operates as a powerful and foreseeable barrier to disclosure and treatment. Their duty to provide immediate psychological care necessarily included an affirmative obligation to ensure that victims could safely report abuse and access mental health services without fear of reprisal. Instead, by engaging in, condoning, or deliberately ignoring retaliatory practices—and by concealing their own misconduct—DEFENDANTS not only failed to provide the required immediate psychological assessment, but affirmatively created conditions that rendered such care inaccessible.

61. This combined failure—denying immediate psychological intervention while fostering an environment of intimidation and retaliation—operated in tandem to magnify and compound PLAINTIFF's harm. Victims were forced to internalize and suppress their trauma and endure escalating psychological distress without support, exacerbating feelings of fear, helplessness, and shame. Clinically, this dynamic is associated with more severe PTSD symptomology, prolonged recovery, and an increased risk of self-destructive behaviors. Legally, DEFENDANTS' conduct reflects a conscious and deliberate disregard for the foreseeable consequences of their actions, as they obstructed access to critical mental health care at the

precise moment it was most necessary, thereby deepening and prolonging PLAINTIFF's injuries.

**SPECIFIC ALLEGATIONS FOR PLAINTIFF**

62. JOHN J.W. DOE:

a. At all relevant times, PLAINTIFF was a minor male in the custody of the COUNTY and confined at JGBYDC, a juvenile detention facility operated and overseen by the COUNTY.

b. In approximately 2001 through 2004, when PLAINTIFF was approximately fifteen toseventeen (15-17) years old, he was housed at JGBYDC. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law, including a staff member who was a guard on PLAINTIFF's unit 1A. PLAINTIFF recalls that this staff member may have been a "CC1" or "CC2" who worked the 2:00 PM to 10:00 PM shift and had previously worked at a camp. His identity is unknown to PLAINTIFF at this time but is ascertainable through discovery.

c. The abusive staff member, also referred to herein as INDIVIDUAL DEFENDANT, whom PLAINTIFF recalls as "Mr. Sonke" or "Sonkey," was a Caucasian male, approximately 6'1 to 6'2" tall, with a medium and somewhat heavier build, short salt and pepper hair, and a generally clean-shaven appearance; he was in his late thirties to early forties at the time. He was assigned to supervise PLAINTIFF's housing unit. On approximately seven (7) occasions, the staff member sexually abused PLAINTIFF by isolating him, including in his cell and in a storage area where supplies were kept. During these incidents, the staff member fondled and groped PLAINTIFF's bare penis without gloves, masturbated PLAINTIFF's penis for at least two (2) minutes, forced PLAINTIFF to masturbate INDIVIDUAL DEFENDANT's penis with PLAINTIFF's hands, forced PLAINTIFF to perform oral sex on INDIVIDUAL DEFENDANT's penis, and digitially penetrated PLAINTIFF's anus without gloves. These acts were

committed in a custodial setting by an employee of the COUNTY for the staff member's own sexual gratification. The INDIVIDUAL DEFENDANT threatened to harm PLAINTIFF if he disclosed the abuse, both during PLAINTIFF's confinement and after his release. The INDIVIDUAL DEFENDANT threatened to write PLAINTIFF up, to plant a knife in PLAINTIFF'S cell to get him in trouble, and that PLAINTIFF would have to stay longer in the facility, if PLAINTIFF disclosed any of this abuse. PLAINTIFF was afraid of what would be done to him by both the officer and other staff members and detainees if they discovered he had a sexual exchange with a male guard. The abusive INDIVIDUAL DEFENDANT had access to PLAINTIFF's file, including his family's address, and PLAINTIFF has lived in fear of the guard finding him outside of the facility. These threats, and the resulting fear and trauma, prevented PLAINTIFF from reporting the abuse or discovering the actionable nature of the COUNTY's institutional conduct until within the applicable limitations period.

d. Following the sexual abuse, PLAINTIFF JOHN J.W. DOE sustained acute physical and psychological trauma. The COUNTY employee who perpetrated the assault, and any COUNTY employees who observed its immediate aftermath, knew or in the exercise of due care had reason to know that PLAINTIFF was in need of immediate medical and forensic care for a serious and obvious condition, yet failed to take any reasonable action to summon such care, including failing to arrange a Sexual Assault Response Team ("SART") examination, post-exposure prophylaxis, or mental-health intervention, in violation of Government Code section 845.6.

e. The INDIVIDUAL DEFENDANT used his authority, control over daily assignments, and isolation within the unit to coerce PLAINTIFF into sexual contact. Whenever the INDIVIDUAL DEFENDANT came on shift and saw PLAINTIFF in the dorms, he moved PLAINTIFF back to his single cell, isolating

him. The abuse occurred under the color of law, and PLAINTIFF — a child at the time—had no ability to refuse or report the abuse without fear of punishment or retaliation.

f. PLAINTIFF is informed and believes, and thereon alleges, that prior to and during the period of abuse, the COUNTY knew or should have known that this staff member posed a risk of sexual misconduct to youth in custody.

g. On information and belief, the INDIVIDUAL DEFENDANT had previously exhibited red flag behaviors or generated concern among other youth or staff, including spending time alone with minors in isolated areas or violating professional boundaries. The INDIVIDUAL DEFENDANT's repeated practice of moving PLAINTIFF from the dorms to his single cell whenever the staff member came on shift was a red flag that should have been prevented by other COUNTY staff. The INDIVIDUAL DEFENDANT made good on his threats by placing PLAINTIFF on "red tag" and locking him in his cell for three days.

h. Despite this, the COUNTY failed to take reasonable steps to investigate, monitor, supervise, or restrict the staff member's interactions with youth detainees. No safeguards were put in place to prevent this staff member from isolating minors or abusing his position of authority.

i. The COUNTY's failure to supervise staff, enforce protective policies, and respond to early warning signs reflects a broader custom, policy, and practice of deliberate indifference to the safety and dignity of children in its juvenile detention facilities.

j. These assaults caused PLAINTIFF to experience tremendous shame, anger, and helplessness, forcing him to repress memories of the assault as much as humanly possible. He struggles to process or recall the memories of the assaults to this day. Only recently, after developing a stable home and emotional support system through his partner, did he disclose the abuse to his partner and his late mother. After seeing online advertisements and learning that others had

suffered similar abuse at California juvenile facilities, PLAINTIFF came forward.

k. The abusive staff members and those who knew this was happening to PLAINTIFF but consciously turned a blind eye intended to cause PLAINTIFF to believe and did cause PLAINTIFF to believe that this sexual abuse was a state-sanctioned part of his criminal punishment. As a child, PLAINTIFF did not have the faculty to understand that what was happening to him was both wrong and a crime. As a detainee, he had no tools or power to successfully report what was happening to him when the individuals with authority over him were the ones inflicting the harm or sanctioning it to occur.

l. As a direct proximate result of DEFENDANTS' physical and sexual abuse PLAINTIFF has experienced ongoing and persistent mental, emotional, and psychological problems, including, but not limited to: anxiety; depression; feelings of helplessness; insomnia; intimacy dysfunction; lowered self-esteem; moodiness; difficultly with meaningfully interacting with others and in intimate relationships; loss of trust and control issues with any person in a position of authority; flashbacks, nightmares, and intrusive thoughts; stress; nervousness; fear; embarrassment; shame; loss of enjoyment of life; post-traumatic stress reactions; difficulty maintaining employment; difficulty in intimate and sexual relationships, including inability to be undressed in front of his partner and the fact that the abuse has severely damaged his sexual life; embarrassment being unclothed around others and refusing to use the bathroom unless he can lock the door; distrust and isolation in social relationships; parenting difficulties; and alcohol and/or substance abuse, among others.

63. Such sexual conduct was done for INDIVIDUAL DEFENDANTS' own sexual gratification and perversion, and performed on and without PLAINTIFF'S consent, as PLAINTIFF was a minor, and thus was unable to give valid, legal consent to such predatory acts.

64. DEFENDANTS and agents and/or employees failed to take reasonable steps and

implement reasonable safeguards to avoid acts of unlawful sexual conduct, including preventing abuse of PLAINTIFF by ABUSERS and DOES 51-100, avoiding placement of the INDIVIDUAL DEFENDANTS in a function or environment in which direct contact with, and complete control of, minors is an inherent part of that function or environment. Instead, DEFENDANTS ignored and concealed the sexual abuse, and sexual harassment, of PLAINTIFF and others. DEFENDANTS and agents and/or employees failed to properly supervise INDIVIDUAL DEFENDANTS at JGBYDC and other juvenile probation facilities, which led to many minors, including PLAINTIFF, being repeatedly sexually abused, molested, and harassed.

65. DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to prevent acts of sexual conduct by INDIVIDUAL DEFENDANTS, including, but not limited to, permitting a "safe haven environment" in which INDIVIDUAL DEFENDANTS were given opportunities and locals to isolate, control, and directly contact minors for their own sexual gratification without supervision or monitoring.

66. Had DEFENDANTS and agents and/or employees properly supervised and controlled the environment, instead of ignoring and concealing the sexual abuse, molestation, and harassment, PLAINTIFF contends that the abuse would have been avoided and/or detected thereby preventing the INDIVIDUAL DEFENDANTS from sexual assaulting minors for their own sexual gratification.

67. The improper handling of sexual abuse, molestation, and harassment as alleged was the proximate cause of PLAINTIFF's injuries due to a systemic issue within DEFENDANTS' patterns and practices of failing to provide adequate protection to the minors in their care and mishandling abuse allegations.

68. In subjecting PLAINTIFF to sexual abuse and harassment, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF's rights, so as to constitute malice and/or oppression under *Civil Code* § 3294.

69. PLAINTIFF is informed and believes and thereon alleges that specifically, the DEFENDANTS and agents and/or employees acted in concert, and under their authority as a

correctional and rehabilitative residential center within the COUNTY'S juvenile justice system, with reckless disregard for the concern of the minors in its charge. DEFENDANTS and agents and/or employees acted intentionally in creating an environment that harbored molesters, placed their vulnerable minor residents at inherent and devastating risk of harm in order to maintain a façade of normalcy and to maintain the funding of the COUNTY and DOES 1-50.

70. The safety of the children entrusted to and confined at JGBYDC devastatingly compromised due to DEFENDANTS' and agents and/or employees' desire to maintain the status quo and circumvent any public scrutiny for their misconduct. These willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the DEFENDANTS and agents and/or employees, thereby entitling them to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

71. DEFENDANTS' and agents and/or employees' acts and/or omissions to acts in the commission of the sexual abuse was done by agents and/or employees who prevented and/or deterred the minor victim from coming forward through threats of intimidation and violence, and therefore COUNTY and DOES 1-50 are directly responsible for covering up the egregious abuse alleged herein.

**<u>FIRST CAUSE OF ACTION</u>**

**SEXUAL ASSAULT**

**(Against All Individual Defendants)**

72. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

73. INDIVIDUAL DEFENDANTS in committing the acts herein alleged, intended to subject PLAINTIFF to sexual abuse and molestation while PLAINTIFF and others were confined to JGBYDC all while they acted in the course and scope of their agency/employment.

74. In so doing, they intended to cause harmful or offensive contact with PLAINTIFF's person, and/or intended to put PLAINTIFF in imminent apprehension of such contact.

75. INDIVIDUAL DEFENDANTS placed PLAINTIFF in imminent apprehension of

harmful or offensive contact, and PLAINTIFF actually and reasonably believed that INDIVIDUAL DEFENDANTS had the ability to make harmful or offensive contact with PLAINTIFF's person.

76. PLAINTIFF was a minor who did not consent to INDIVIDUAL DEFENDANTS' intended harmful or offensive contact with PLAINTIFF's person, or to their intent to place PLAINTIFF in imminent apprehension of such contact.

77. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated PLAINTIFF's rights, pursuant to *Civil Code* § 43, of protection from bodily restraint or harm, and from personal insult.

78. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated and breached their duty, pursuant to *Civil Code* § 1708, to abstain from injuring PLAINTIFF's person or infringing upon PLAINTIFF's rights.

79. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

80. INDIVIDUAL DEFENDANTS' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al. in an amount to be determined by proof at trial.

## SECOND CAUSE OF ACTION

**SEXUAL BATTERY (CIVIL CODE § 1708.5)**

**(Against All Individual Defendants)**

81. PLAINTIFF re-alleges and incorporates by reference herein each and every

allegation contained above and below as though fully set forth and brought in this cause of action.

82. At all times herein referenced, INDIVIDUAL DEFENDANTS were employees of the COUNTY, during which time INDIVIDUAL DEFENDANTS were acting within the scope of their agency and employment.

83. During PLAINTIFF's confinement at JGBYDC, INDIVIDUAL DEFENDANTS intentionally, recklessly, and wantonly did acts which were intended to, and did, result in harmful and offensive contact with intimate parts of the PLAINTIFF's person, during PLAINTIFF's time at JGBYDC, while they acted in the course and scope of their agency or employment with COUNTY and DOES 1-50 in violation of *Penal Code* §§ 243.4(a) and 289.6.

84. Further, PLAINTIFF did not consent (nor could he consent) to the harmful contact with his person.

85. As a result of INDIVIDUAL DEFENDANTS complete control over PLAINTIFF, by color of authority, PLAINTIFF's physical confinement and detention, the PLAINTIFF's vulnerability, the PLAINTIFF's mental and emotional state, and the PLAINTIFF's young age, PLAINTIFF did not, and could not, give meaningful consent to such acts. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFF.

86. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

87. INDIVIDUAL DEFENDANTS' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Individual Defendants)**

88. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

89. At the time of the incidents described above, INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress.

90. Each of the INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFF and responsible for maintaining a special relationship.

91. INDIVIDUAL DEFENDANTS' abuse of PLAINTIFF was an abuse of their authority as an agent and/or employee of COUNTY and performed while in the course and scope of their employment under color of law.

92. PLAINTIFF's trust in INDIVIDUAL DEFENDANTS for his safety and wellbeing, turned to fear and intimidation by virtue of DEFENDANTS' and agents and/or employees' wrongful conduct.

93. PLAINTIFF contends said misconduct was authorized, ratified, adopted and/or approved of by DEFENDANTS.

94. INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFF.

95. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

96. INDIVIDUAL DEFENDANTS' conduct described herein was intentional and malicious and done for the purpose of causing, or with substantial certainty, that such conduct would cause PLAINTIFF to suffer humiliation, mental anguish, and emotional and physical distress.

97. INDIVIDUAL DEFENDANTS acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF's rights, so as to constitute malicious and/or oppression under *Civil Code* section 3294 thereby entitling him to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

## <u>FOURTH CAUSE OF ACTION</u>

## VIOLATION OF CIVIL CODE § 52.1

## (Against All Individual Defendants)

98. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

99. PLAINTIFF alleges that at all times mentioned herein, the conduct of DEFENDANTS and agents and/or employees constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by PLAINTIFF of rights secured by the Constitution of law of the United States, or secured by the Constitution or laws of the State of California, including interference with their right to be secure in his person and free from unreasonable and unlawful search and seizure under the Fourth Amendment and Cal. Const. Art. I sec. 13 as well as Cal. Civil Code § 43, and the right of protection from bodily restraint and improper touching.

100. PLAINTIFF also contends that DEFENDANTS' and agents and/or employees'

actions, as alleged herein, interfered with PLAINTIFF's right to free speech, freedom from discrimination on the basis of race and sex, and freedom from cruel and unusual punishment as afforded by the United States and California Constitutions through violence, threats of violence, intimidation, and/or coercion.

101. DEFENDANTS' actions and willful omissions, and those of their agents and/or employees as alleged herein, interfered with and will continue to interfere with PLAINTIFF's constitutional rights to receive an immediate response to his reports of sexual assault, molestation, and harassment by DEFENDANTS and their agents and/or employees.

102. DEFENDANTS and agents and/or employees oppressive and unlawful conduct in ignoring, concealing, threatening, intimidating, retaliating against, and ultimately suppressing PLAINTIFF's complaints of being sexually abused further violated PLAINTIFF's constitutional protections under protections under California and the United States.

103. DEFENDANTS and agents and/or employees, knowingly, with gross negligence, and deliberate indifference to the state Constitutional rights of citizens, maintain and permit an official policy and custom of permitting the occurrence of the types of wrongs set forth hereinabove and hereafter, including violation of PLAINTIFF's Fourth and Fourteenth Amendments to be free from unlawful sexual abuse.

104. PLAINTIFF contends that DEFENDANTS and agents and/or employees failed to adhere to their own policies and procedures and/or failed to have any in the first place to prevent this harm, including, but not limited to, the deliberate indifferent training of its officers and/or employees in conducting, training, monitoring and supervising unlawful violations of professional misconduct by way of color of authority such as:

a. Physical assault and abuse of inmates by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees that were subsequently poorly investigated and/or covered up by DEFENDANTS and agents and/or employees.

b. Intentional violation of DEFENDANTS' and agents and/or employees' supervision policies and procedures by officers, supervisors, and/or other

higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees in order to avoid evidencing improper assault and abuse on citizens by DEFENDANTS and agents and/or employees.

c. Sexual harassment, extortion, and intimidation by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees.

d. Abuse and assault against minors, minorities, and citizens with disabilities by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees as part of an accepted practice that were subsequently poorly investigated and/or covered up by DEFENDANTS and agents and/or employees to avoid legal consequences.

e. Sexual abuse and assault against inmates in custody by officers, supervisors, and/or other higher-ranking officers with policymaking authority for DEFENDANTS and agents and/or employees as defined as cruel and unusual punishment deeply offensive to human dignity and not part of the penalty that criminal offenders pay for their offenses against society.

f. Failure to report or investigate allegations of sexual misconduct by COUNTY who was required to do so, both under its own policies and procedures, as well as under federal mandate by the Fourteenth Amendment and California law.

105. As a direct cause of DEFENDANTS and agents and/or employees' wrongful conduct intended to and actually interfered with PLAINTIFF's Constitutional Rights to be free from (a) gender discrimination, (b) free speech, (c) cruel and unusual punishment, and (d) Due Process.

106. PLAINTIFF's rights pursuant to California *Civil Code* § 52.1 were violated, causing injuries and damages in an amount to be proved at the time of trial.

107. Due to the conduct of DEFENDANTS and agents and/or employees, and each of them, PLAINTIFF has been required to incur attorneys' fees and will continue to incur attorneys'

fees, and pursuant to California *Civil Code* § 52.1 is entitled to recovery of said fees.

108. In addition, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF's rights, entitling PLAINTIFF to punitive and/or exemplary damages against only INDIVIDUAL DEFENDANTS, et al., attorneys' fees, other damages pursuant to California *Civil Code* § 52(b)(1), and temporary restraining order or a preliminary or permanent injunction ordering DEFENDANTS and agents and/or employees to refrain from conduct or activities as alleged herein, stating "VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.77 OF THE PENAL CODE," and other such relief as the Court deems proper.

**<u>FIFTH CAUSE OF ACTION</u>**

**NEGLIGENCE**

**(Against All Defendants)**

109. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

110. This cause of action is brought pursuant to Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. DEFENDANTS owed PLAINTIFF such mandatory duties under Welfare and Institutions Code §§ 209, 210, 850–852, the California Penal Code §§ 11164–11166 (the Child Abuse and Neglect Reporting Act), and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, 1350–1354, 1361–1362, 1430–1432, 1453, and 1510. These duties were specifically intended to protect detained minors from the risk of sexual abuse, neglect, and harm.

111. Each of PLAINTIFF's causes of action against the COUNTY is predicated on an express statutory basis for liability, including Government Code sections 815.2, 815.6, and 845.6. To the extent the COUNTY asserts immunity under Government Code section 844.6, that immunity is by its terms subject to the exceptions enumerated in the statute, including Government Code section 845.6, and PLAINTIFF's claims are further authorized and revived under Code of Civil Procedure section 340.1, which the Legislature enacted to expand the ability

of victims of childhood sexual assault to hold responsible public entities accountable.

112. DEFENDANTS and agents and/or employees, and each of them, had a duty through their special relationship with PLAINTIFF to protect him from being sexually abused under the color of authority by COUNTY employees and/or agents in the course and scope of their agency. DEFENDANTS and agents and/or employees owed PLAINTIFF a special fiduciary relationship that law enforcement and/or persons in a position of authority dealing with vulnerable minors committed to their custody, owe to protect them from harm. The foregoing statutory duties establish a mandatory duty of care within the meaning of Government Code § 815.6. DEFENDANTS also owed PLAINTIFF duties arising from their special relationship, which supplements, but does not replace, the mandatory statutory duties described herein.

113. At all times prior to, during and subsequently, DEFENDANTS and agents and/or employees knew and/or should have known that INDIVIDUAL DEFENDANTS were planning, conspiring and/or committing sexual abuse on PLAINTIFF and others who had been entrusted to them and instructed to provide for their safety, care, and welfare.

114. DEFENDANTS and agents and/or employees, and each of them, further hid the conduct from PLAINTIFF, his guardians and parents, the public and other law enforcement agencies as part of a systematic scheme of fraud and concealment to prevent others from learning the truth of the ongoing and pervasive sexual abuse occurring within the confined walls of JGBYDC with defenseless minors.

115. PLAINTIFF alleges that DEFENDANTS, including their agents and employees, breached mandatory duties to investigate and act upon all reports and indications of sexual abuse. DEFENDANTS further failed to provide a safe and secure environment in which PLAINTIFF could report such abuse without threats, intimidation, violence, or retaliation—despite having a duty to protect him from harm by those charged with their care and supervision.

116. At all times relevant herein, under California Welfare and Institutions Code § 850, each county's board of supervisors had a mandatory duty to provide and maintain a "suitable house" or facility for the detention of wards and dependent children of the juvenile court. Such a facility was expressly not to be deemed or treated as a penal institution. Welfare and Institutions

Code § 851 further required that any juvenile hall "shall be a safe and supportive homelike environment."

117. DEFENDANTS, including their agents and employees, breached these mandatory statutory duties and at all times relevant herein failed to provide a "suitable house" and to ensure a "safe and supportive homelike environment" as required by law, instead exposing PLAINTIFF and others, and each of them, to a safe haven for sexual abuse where predators were allowed to openly prey upon defenseless children who were to have been provided with a safe environment that promoted their rehabilitation.

118. DEFENDANTS breached mandatory duties under Title 15, § 1324, which required maintaining and updating a written policy and procedures manual covering all applicable regulations, including procedures prohibiting sexual abuse and retaliation. DEFENDANTS failed to implement and/or meaningfully enforce such policies, creating conditions where rampant childhood sexual abuse could occur and remain concealed.

119. DEFENDANTS violated mandatory duties under Title 15, § 1350, which required written intake and admission procedures that included screening for health, behavioral, and safety risks. DEFENDANTS failed to conduct adequate intake screenings, failing to identify or address risks of sexual victimization or aggression.

120. PLAINTIFF further alleges that DEFENDANTS, including their agents and employees, breached mandatory duties imposed by Welfare and Institutions Code § 209, which required annual inspections of juvenile facilities by the juvenile court and biennial inspections by the Board of Corrections. DEFENDANTS failed to ensure or conduct such inspections, failed to remedy cited deficiencies, and allowed unsafe and unmonitored conditions to persist.

121. PLAINTIFF alleges that DEFENDANTS, and each of them, violated mandatory duties under Welfare and Institutions Code § 852 by failing to ensure that juvenile halls remained under the management and control of the probation officer in compliance with state law. DEFENDANTS failed to supervise staff adequately, permitted unqualified or untrained individuals to exercise control over minors, and failed to maintain necessary operational oversight.

122. PLAINTIFF further alleges that DEFENDANTS violated mandatory intake procedures required by California Code of Regulations, Title 15, § 1350, by failing to conduct required health and developmental screenings, failing to provide secure property storage, and failing to offer prompt communication opportunities to family or counsel. These omissions foreseeably exposed PLAINTIFF to harm, neglect, and abuse.

123. PLAINTIFF alleges that DEFENDANTS breached mandatory duties under California Code of Regulations, Title 15, § 1320, which required appointment of a qualified superintendent and properly screened, trained, and cleared staff. DEFENDANTS knowingly or negligently employed staff without required background checks, medical clearances, or training in child supervision and safety, thereby creating an unreasonable risk of harm to PLAINTIFF.

124. PLAINTIFF alleges that DEFENDANTS violated mandatory duties under Welfare and Institutions Code § 210 by failing to implement and maintain operational standards consistent with those set forth by the Board of Corrections for juvenile halls. DEFENDANTS failed to adhere to minimum standards for staffing, safety, programming, health care, sanitation, and capacity limits, thereby endangering the well-being of PLAINTIFF and others and exposing him to a sexual assault safe haven where predation thrived and resistance to such egregious conduct was punished and silenced.

125. DEFENDANTS further breached their statutory duties by failing to establish, implement, and enforce operational policies and procedures necessary to ensure that all mandated reporters employed in their facilities would timely report known or reasonably suspected child abuse as required by Penal Code §§ 11164–11166. These omissions violated DEFENDANTS' obligations to operate juvenile detention facilities in compliance with the Child Abuse and Neglect Reporting Act and created conditions in which abuse could occur and continue without detection or intervention.

126. At all times alleged herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." DEFENDANTS and agents

and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

127. By failing to report the continuing harassment and abuse, which DEFENDANTS and each of them knew or should have known, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California Penal Code § 11166, DEFENDANTS and agents and/or employees created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act, and as a result, unreasonably and wrongfully exposed PLAINTIFF and other minors to sexual harassment and abuse.

128. PLAINTIFF was a member of the class of persons for whose protection California Penal Code § 11166 was specifically adopted to protect.

129. Had DEFENDANTS and agents and/or employees adequately reported the abuse and harassment of PLAINTIFF and other minors as required by California Penal Code § 11166, further harm to PLAINTIFF and other minors would have been avoided.

130. As a direct and proximate result of DEFENDANTS' and agents and/or employees' failure to follow the mandatory reporting requirements of California Penal Code § 11166, DEFENDANTS and agents and/or employees wrongfully denied PLAINTIFF and other minors, the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the abuse and sexual harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS.

131. DEFENDANTS' breaches of these mandatory statutory duties, both individually and collectively, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6, proximately causing the injuries and damages described herein.

132. The physical, mental, and emotional damages and injuries resulting from the sexual abuse and harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS, was the type of

occurrence and injuries that the Child Abuse and Neglect Reporting Act was designed to prevent.

133. As a result, DEFENDANTS and agents and/or employees failure to comply with the mandatory reporting requirements of California Penal Code § 11166 also constituted a per se breach of DEFENDANTS' and agents and/or employees' duties to PLAINTIFF.

134. DEFENDANTS individually, jointly, and/or severally, and agents and/or employees breached their duty of care to PLAINTIFF which was the direct and proximate cause of PLAINTIFF sustaining severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

135. DEFENDANTS and agents and/or employees' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

## <u>SIXTH CAUSE OF ACTION</u>

## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

**(Against All Defendants)**

136. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

137. This cause of action is brought pursuant to Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. DEFENDANTS owed PLAINTIFF mandatory duties under Welfare and Institutions Code § 210 and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, which established requirements for the selection, background investigation, training, supervision, and retention of qualified staff in juvenile detention facilities.

DEFENDANTS also had duties under the Child Abuse and Neglect Reporting Act, Penal Code §§ 11164–11166, to train staff regarding their obligations to report known or suspected abuse.

138. For clarity, this cause of action asserts two related but distinct theories: (a) failure to screen, hire, and retain qualified and suitable staff as required by law; and (b) failure to train and supervise staff regarding their mandatory obligations to protect and report abuse of minors.

139. PLAINTIFF alleges that at all times mentioned herein, the INDIVIDUAL DEFENDANTS were agents and employees of COUNTY and performed the acts herein while in the course and scope of their agency and employment at the time of subject sexual abuse. Moreover, PLAINTIFF contends that said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees.

140. PLAINTIFF also contends that COUNTY is vicariously liable for the tortious sexual acts of other DEFENDANTS and agents and/or employees, and each of them, flowing from their employment with DEFENDANTS and agents and/or employees while acting in the course and scope of their employment as it: (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

141. At all times relevant herein, DEFENDANTS, and each of them, had a mandatory duty under California Welfare and Institutions Code § 210 to operate and maintain juvenile detention facilities in accordance with minimum standards adopted by the Board of Corrections. These regulations, codified in Title 15 of the California Code of Regulations, imposed binding requirements on DEFENDANTS to ensure the safety, health, and welfare of detained minors, including specific duties to prevent, detect, respond to, and report sexual abuse.

142. DEFENDANTS, and each of them, breached mandatory duties imposed by California Code of Regulations, Title 15, § 1320, which required the appointment of qualified staff with appropriate health clearance and background checks. DEFENDANTS failed to ensure staff were adequately screened and qualified, thereby enabling unfit individuals to supervise and abuse detained youth.

143. DEFENDANTS, and each of them, violated mandatory duties under Title 15, § 1322, which required employing only personnel meeting minimum standards set by law and the Board of Corrections, including suitability for work with minors. DEFENDANTS hired, retained, or assigned unqualified or unvetted staff who posed a foreseeable risk of sexual abuse.

144. DEFENDANTS breached mandatory duties under Title 15, § 1323, which required a written staff development and training plan providing for pre-service orientation and annual in-service training. DEFENDANTS failed to adopt, implement, or enforce such a plan, resulting in staff untrained in abuse prevention, supervision, trauma-informed care, and mandatory reporting.

145. DEFENDANTS violated mandatory duties under Title 15, § 1321, which required maintaining sufficient on-duty staff at all times to ensure youth safety, including minimum staffing ratios and continuous supervision. DEFENDANTS failed to ensure adequate staffing levels, enabling opportunities for sexual assault by staff and other residents.

146. DEFENDANTS breached mandatory duties under Title 15, § 1352, which required classifying minors based on safety factors such as age, maturity, and behavior. DEFENDANTS failed to implement or enforce classification procedures to separate vulnerable youth from aggressive or sexually predatory residents.

147. DEFENDANTS violated mandatory duties under Title 15, § 1353, which required informing youth, upon orientation, of their rights, including the facility's prohibition on sexual abuse and procedures for reporting it without retaliation. DEFENDANTS failed to adequately inform or protect PLAINTIFF and others, depriving him of the ability to safely report abuse.

148. DEFENDANTS breached mandatory duties under Title 15, § 1354, which required separating youth when necessary to protect them from assault or intimidation. DEFENDANTS failed to separate aggressive or abusive residents and/or staff from vulnerable youth, enabling repeated acts of childhood sexual abuse.

149. DEFENDANTS violated mandatory duties under Title 15, § 1430, which required immediate health screening upon intake to identify medical, mental, or behavioral conditions posing safety risks. DEFENDANTS failed to conduct meaningful screenings that would have

revealed vulnerability to sexual victimization or prior abuse history.

150. DEFENDANTS breached mandatory duties under Title 15, § 1432, which required a comprehensive health assessment within 96 hours, including screening for recent trauma or sexual abuse. DEFENDANTS failed to identify or respond to evidence of prior and/or ongoing sexual abuse suffered by PLAINTIFF.

151. The agents and/or employees of DEFENDANTS have a special relationship with PLAINTIFF, which imposes upon them an affirmative duty to take reasonable steps to protect him from reasonably foreseeable risks of harm.

152. INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFF and others as employees and/or agents of COUNTY, responsible for maintaining the special relationship with the general public, including PLAINTIFF.

153. Title 15, §§ 1322 and 1323, required DEFENDANTS to maintain and implement a written staff development and training plan addressing all duties imposed by law, including training in the recognition, prevention, and mandatory reporting of child abuse and neglect. DEFENDANTS breached these duties by failing to train employees to understand or comply with their statutory obligations under Penal Code §§ 11164–11166, foreseeably enabling the concealment of ongoing abuse.

154. INDIVIDUAL DEFENDANTS' sexual abuse of PLAINTIFF was an abuse of their authority as an agent and/or employee of COUNTY and DOES 1-50.

155. The agents and/or employees of DEFENDANTS failed to use reasonable care in hiring and supervising their employees and/or agents who had actual and constructive knowledge and/or notice that the manner and means of hiring, training, supervising and retaining agents and/or employees created a dangerous environment for the general public, including PLAINTIFF, and INDIVIDUAL DEFENDANTS' acts and propensity to commit such acts. Nonetheless, COUNTY and DOES 1-50's agents and/or employees took no remedial steps to protect the public, including PLAINTIFF.

156. DEFENDANTS deliberately disregarded their mandatory duties under Title 15,

§§ 1322 and 1323, by hiring, retaining, and deploying unqualified and untrained staff in positions of authority over children. DEFENDANTS' systemic failure to implement required staff screening and training procedures created an environment where staff were unprepared or unwilling to recognize, prevent, or report sexual abuse, thereby directly contributing to the harm suffered by PLAINTIFF.

157. At all times relevant herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." DEFENDANTS and agents and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

158. DEFENDANTS' and agents and/or employees' mandated duties owed to PLAINTIFF pursuant to California Penal Code §§ 11164, 11165, 11166 included contacting law enforcement, the California Department of Social Services, and/or other appropriate administrative agencies to report suspected child abuse pursuant to the Child Abuse and Neglect Reporting Act.

159. Despite receiving this notice and/or witnessing firsthand INDIVIDUAL DEFENDANTS proclivity to engage in the sexually abusive behavior against PLAINTIFF and others at JGBYDC, DEFENDANTS and/or agents and employees failed to perform their mandatory duties by failing to train the agents and/or employees of DEFENDANTS of their mandated duty to contact law enforcement, the California Department of Social Services, or any other administrative agency as was mandated pursuant to the Child Abuse and Neglect Reporting Act.

160. The agents and/or employees of DEFENDANTS knew or should have known that

employment practices which failed to screen or investigate agents and/or employees with propensity to commit sexual abuse, or improper touching would create a dangerous environment for PLAINTIFF.

161. The agents and/or employees of COUNTY and DOES 1-50 knew or should have known about INDIVIDUAL DEFENDANTS' and DOES 51-100's sexual abuse and improper touching of persons such as PLAINTIFF and others. Despite such knowledge, DEFENDANTS' agents and/or employees ignored and failed to investigate or remedy INDIVIDUAL DEFENDANTS' and DOES 51-100's conduct in any way, thereby placing the community at risk of harm, including PLAINTIFF.

162. DEFENDANTS' breaches of these mandatory duties, including those imposed by Welfare and Institutions Code § 210, Title 15 of the California Code of Regulations, and Penal Code §§ 11164–11166, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6.

163. Despite such knowledge, DEFENDANTS negligently hired, retained, and supervised, and failed to properly train INDIVIDUAL DEFENDANTS and DOES 51-100, failing to exercise reasonable care in preventing foreseeable harm to PLAINTIFF and others.

164. The agents and/or employees of COUNTY and DOES 1-50 owed PLAINTIFF a duty to protect them from unlawful sexual abuse and touching. COUNTY and DOES 1-50's agents and/or employees knew or should have known that failure to properly supervise their personnel and investigate their conduct, would subject persons, including PLAINTIFF, to an unreasonable risk of being unlawfully sexually abused and touched. DEFENDANTS breached their duty of care to PLAINTIFF.

165. As a direct and proximate result of negligent hiring and/or supervision of COUNTY and DOES 1-50's agents and/or employees, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. PLAINTIFF is entitled to damages in an amount to be

determined by proof at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(Against All Defendants)**

166. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

167. The agents and/or employees of DEFENDANTS have, with their citizens, a special relationship, which imposes upon them an affirmative duty to take reasonable steps to protect their citizens from reasonably foreseeable risks of harm.

168. PLAINTIFF alleges that at all times mentioned herein, INDIVIDUAL DEFENDANTS and DOES 51-100 were agents and/or employees of COUNTY and DOES 1-50, inclusively, and that INDIVIDUAL DEFENDANTS and DOES 51-100 performed the acts herein while in the course and scope of their agency and employment at the time of the subject incident.

169. Moreover, PLAINTIFF contends said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees, and that liability flows from their employment with COUNTY and DOES 1-50 while acting in the course and scope of employment as it (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

170. INDIVIDUAL DEFENDANTS and DOES 51-100 were in a position of authority, trust, influence, and persuasion over PLAINTIFF, INDIVIDUAL DEFENDANTS and DOES 51-100 were an agent and/or employee of COUNTY and DOES 1-50, responsible for maintaining the special relationship with the community, including PLAINTIFF.

171. INDIVIDUAL DEFENDANTS and DOES 51-100's sexual abuse of PLAINTIFF and others was therefore also an abuse of authority as an agent and/or employee of COUNTY and DOES 1-50.

172. The agents and/or employees of DEFENDANTS breached their duty to protect its

citizens, including PLAINTIFF, from reasonably foreseeable risks of sexual abuse when it has failed to use reasonable care in hiring and/or supervising and/or training its agents and/or employees from reasonably foreseeable risks of sexual abuse and touching and detect and report reasonable suspicion of sexual abuse and improper touching.

173. DEFENDANTS and agents and/or employees knew and/or should have known that its conduct as described in this complaint was likely to cause its citizens, including PLAINTIFF, to suffer severe emotional distress.

174. As a direct and proximate result of this negligent conduct of DEFENDANTS and agents and/or employees' and as a direct proximate result of the negligent conduct of DEFENDANTS, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

## <u>EIGHTH CAUSE OF ACTION</u>

**42 U.S.C. § 1983**

**(Against All Individual Defendants)**

175. PLAINTIFFS realleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

176. At all relevant times, the INDIVIDUAL DEFENDANTS acted under color of law in their capacities as COUNTY employees at JGBYDC and deprived PLAINTIFF of rights secured by the Constitution of the United States, including the Fourteenth Amendment right to bodily integrity and to be free from unreasonable, excessive, and sexualized force while in custody.

177. The INDIVIDUAL DEFENDANTS used their authority to isolate, coerce, and sexually assault PLAINTIFF, a minor detainee, with deliberate indifference to, and/or specific intent to violate, clearly established constitutional rights.

178. As a direct and proximate result, PLAINTIFF suffered damages as alleged herein. PLAINTIFF seeks compensatory damages, and, against the INDIVIDUAL DEFENDANTS, punitive damages to the extent permitted by law, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## NINTH CAUSE OF ACTION

## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (Monell)

## (Against COUNTY)

179. PLAINTIFFS realleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

180. The constitutional deprivations suffered by PLAINTIFF were caused by COUNTY policies, customs, and practices exhibiting deliberate indifference to the rights of children in custody, including but not limited to: (a) failing to train, supervise, and discipline staff regarding prevention, detection, and reporting of sexual abuse; (b) permitting staff to isolate minors in staff-only areas without adequate supervision; (c) failing to investigate and address red flags and prior complaints of sexual misconduct; and (d) maintaining a culture of intimidation and retaliation that deterred reporting by youth.

181. The existence of these policies, customs, and practices is established by, among other things, a persistent and widespread pattern of staff-on-youth sexual abuse occurring across the COUNTY's juvenile facilities—including the James G. Bowles Youth Detention Center—spanning from approximately 1999 through 2015 and involving multiple distinct staff perpetrators who employed the same method of operation: isolating minors in staff-only areas such as laundry rooms, offices, therapist offices, and showers, where supervision was absent. This recurring pattern, the COUNTY's failure to act upon grievances and red flags and the COUNTY's non-compliance with the national standards of the Prison Rape Elimination Act ("PREA") and its own Detention Center Administration Manuals, demonstrate that the COUNTY's final policymakers, including the Chief Probation Officer and the superintendents of its juvenile facilities, had actual or constructive notice of the substantial risk of sexual abuse and were deliberately indifferent to it.

182. The foregoing policies, customs, and practices were the moving force behind the violations of PLAINTIFF's constitutional rights. The COUNTY is liable for damages under 42 U.S.C. § 1983. PLAINTIFFS seek compensatory damages and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

183. PLAINTIFF's constitutional injury was directly and proximately caused by these specific policies and customs. Had the COUNTY adequately trained, supervised, and disciplined its staff, investigated complaints and red flags, prohibited the unsupervised isolation of minors in staff-only areas, and maintained a safe, non-retaliatory reporting system, the abuse of PLAINTIFF would have been prevented or detected. The COUNTY's policies, customs, and practices were therefore the moving force behind, and bore a direct causal link to, the violation of PLAINTIFF's constitutional rights.

## TENTH CAUSE OF ACTION

## FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (Gov't Code § 845.6)

## (Against COUNTY and Individual Defendants)

184. PLAINTIFF realleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

185. While in custody at FACILITY, the INDIVIDUAL DEFENDANTS and other COUNTY employees knew or, in the exercise of due care, had reason to know that PLAINTIFF was in need of immediate medical and/or mental health care following the sexual assaults alleged herein, as evidenced by his acute emotional distress and trauma. Despite this knowledge, they failed to summon such immediate medical care as required by Government Code section 845.6.

186. Specifically, (1) PLAINTIFF had a serious and obvious medical condition requiring immediate care following the sexual assaults, including acute genital, anal, or other physical trauma, exposure to the risk of sexually transmitted infection, and acute psychological trauma requiring immediate forensic and mental-health intervention; (2) the COUNTY employees who perpetrated or directly witnessed the assaults had actual or constructive knowledge of PLAINTIFF's need for immediate care because they personally committed or

observed the assaults and their immediate aftermath; and (3) those employees failed to take any reasonable action to summon medical or mental-health care, including failing to arrange a Sexual Assault Response Team ("SART") examination, post-exposure prophylaxis, or trauma-informed treatment, and instead concealed the abuse to avoid its detection.

187. As a direct and proximate result of the failure to summon immediate medical care, PLAINTIFF suffered additional and exacerbated injury and damages according to proof.

188. PLAINTIFF has complied with all applicable prerequisites to filing this action, or, alternatively, are exempt from the Government Claims Act's claim-presentation requirements pursuant to California Government Code § 945.9 as to claims arising out of sexual assault by law enforcement or custodial personnel. To the extent any claim-presentation requirement is asserted as to the Government Code § 845.6 claim, PLAINTIFF alleges that the failure to summon immediate medical and mental health care was directly related to, connected with, or incidental to the sexual assaults alleged because the need for care arose from the assaults, the denial of care occurred immediately after and because of the assaults, the denial of care was part of the same institutional concealment and retaliation that followed the assaults, and the requested care would have documented and exposed the sexual abuse. In the further alternative, any claim-presentation deadline was tolled and DEFENDANTS are estopped from relying on that deadline because COUNTY employees, supervisors, probation personnel, and mandated reporters ignored written complaints and medical requests, destroyed or suppressed reports, concealed the abuse, failed to advise PLAINTIFF of safe reporting procedures, threatened or tolerated retaliation against minors who attempted to report abuse or obtain care, and thereby prevented PLAINTIFF from discovering and presenting any claim based on the denial of immediate care.

189. PLAINTIFF's claim under Government Code section 845.6 is exempt from the Government Claims Act's claim-presentation requirement pursuant to Code of Civil Procedure section 340.1, subdivision (q), and Government Code section 905, subdivision (m), because the claim arises from, and is directly related to and incidental to, the childhood sexual assaults alleged herein; the need for immediate medical care arose from those assaults, and the denial of that care formed part of the same continuing course of abuse and concealment.

**ELEVENTH CAUSE OF ACTION**

**DECLARATORY RELIEF AS APPLIED**

**UNCONSTITUTIONALITY OF CAL. GOV. CODE § 844.6(a)(2)**

**(Against COUNTY)**

190. PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

191. This cause of action is brought pursuant to Code of Civil Procedure § 1060, which provides that any person who desires a declaration of his or her rights or duties with respect to another may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his or her rights and duties, including a determination of any question of validity arising under a statute. *See Lane v. City of Redondo Beach*, 49 Cal.App.3d 251, 255 (Ct. App. 1975) (explaining "[d]eclaratory relief is a proper remedy to determine the constitutionality of a statute").

192. An actual controversy exists between PLAINTIFF and COUNTY regarding the constitutionality of Government Code § 844.6(a)(2) as applied to PLAINTIFF under the circumstances alleged in this Complaint.

193. Specifically, the controversy concerns whether Government Code § 844.6(a)(2) may constitutionally be applied to immunize COUNTY from liability for the injuries sustained by PLAINTIFF – a minor confined at a juvenile detention facility who was sexually assaulted by a COUNTY employee acting within the course and scope of their employment – where COUNTY systematically failed to prevent, detect, or remedy such sexual assaults despite actual and constructive knowledge of a pervasive pattern of staff sexual misconduct at its facility.

194. Government Code § 844.6(a)(2) provides that a public entity is not liable for "an injury to any prisoner."

195. While the facial validity of this provision has been sustained against prior constitutional challenge under rational basis review, no California court has adjudicated the constitutionality of § 844.6(a)(2) as applied to the specific circumstances alleged herein – namely, the systematic sexual assault of juvenile wards confined at a county juvenile detention

facility by COUNTY employees, where the COUNTY's immunity operates to insulate COUNTY from any accountability for its own conscious failure to protect a class of detained minors from a category of harm to which they are uniquely vulnerable by reason of their youth, confinement, and dependence on the state.

196. As applied to PLAINTIFF, Government Code § 844.6(a)(2) violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution.

197. The application of § 844.6(a)(2) to bar PLAINTIFF's claims does not merely classify PLAINTIFF as a "prisoner" for purposes of governmental immunity; rather, as applied to the facts alleged herein, it creates and enforces a classification that immunizes COUNTY from liability for injuries inflicted upon juvenile wards precisely because of their status as confined minors – sexually assaulted by COUNTY employees – while shielding COUNTY from accountability for its systematic failure to protect this vulnerable class from harm.

198. Under the California Constitution, classifications based on sex are suspect and juveniles are afforded heightened protections.

199. PLAINTIFF was a minor who was sexually assaulted by adult COUNTY employees wielding unfettered custodial authority over him.

200. The application of § 844.6(a)(2) to immunize COUNTY from all liability for injuries caused by the sexual assault of detained children by its own employees cannot survive heightened constitutional scrutiny or even rational basis review.

201. Under heightened scrutiny, COUNTY cannot demonstrate that the application of § 844.6(a)(2) immunity to bar PLAINTIFF's claims serves a compelling or important governmental interest, or that such application is necessary or substantially related to further any such interest.

202. The stated purposes of § 844.6 – limiting the cost of law enforcement and avoiding difficulties of orderly prison administration – cannot satisfy heightened scrutiny when the immunity is invoked to shield COUNTY from liability for the systematic sexual assault of juvenile wards by COUNTY employees, a harm that the Legislature itself has declared

categorically unlawful and impermissible through Penal Code § 289.6, Welfare and Institutions Code §§ 209, 210, and 850-852, the Child Abuse and Neglect Reporting Act, and the 2003 PREA.

203. The application of § 844.6(a)(2) to PLAINTIFF further violates the due process guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution.

204. As alleged herein, PLAINTIFF was confined at COUNTY juvenile detention centers under mandatory court orders and was wholly dependent upon COUNTY for his safety, health, and physical security.

205. COUNTY assumed an affirmative custodial obligation to protect PLAINTIFF from foreseeable harm.

206. The application of absolute immunity to shield COUNTY from any liability for the systematic sexual violation of children in its mandatory custody, by its own employees acting within the course and scope of their employment, shocks the conscience and deprives PLAINTIFF of any meaningful remedy against the entity that created, maintained, and controlled the conditions enabling his abuse.

207. Government Code § 815 provides that public entities are generally not liable for injuries except as provided by statute, but its Legislative Committee Comments specifically preserve "such liability as may be required by the state or federal constitution." *See Towery v. State of California*, 14 Cal.App.5th 226, 233 (2017) (explaining that "in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable").

208. Where, as here, the California and United States Constitutions mandate equal protection of the laws and prohibit arbitrary deprivation of fundamental rights, the application of § 844.6(a)(2) to bar PLAINTIFF's claims against COUNTY cannot stand, because the Constitution itself requires that the immunity yield to the constitutional mandate.

209. PLAINTIFF contends that Government Code § 844.6(a)(2) is unconstitutional as applied to juvenile wards who have been sexually assaulted by COUNTY employees acting

within the course and scope of their employment, under circumstances where COUNTY had actual or constructive knowledge of a pattern and practice of such sexual assaults and failed to take reasonable steps to prevent, detect, or remedy the same.

210. COUNTY contends, or is expected to contend, that Government Code § 844.6(a)(2) provides it with absolute immunity from PLAINTIFF's claims.

211. A judicial declaration is necessary and appropriate at this time to determine the respective rights and duties of the parties with respect to the application of Government Code § 844.6(a)(2) to the circumstances alleged herein.

212. Without such a declaration, PLAINTIFF will be unable to obtain a definitive determination of whether the immunity provision may lawfully be applied to his claims and will remain uncertain of his legal rights and remedies against COUNTY.

213. The declaration sought is not merely advisory; it will resolve an actual, present controversy between parties with adverse legal interests.

**PRAYER FOR DECLARATORY RELIEF**

A. WHEREFORE, PLAINTIFF prays for judgement as follows: For a judicial declaration, pursuant to Code of Civil Procedure § 1060, that Government Code § 844.6(a)(2) is unconstitutional as applied to juvenile wards who have been sexually assaults by employees of COUNTY acting within the course and scope of their employment, under circumstances where COUNTY had actual or constructive knowledge of a pattern and practice of such sexual assaults and systematically failed to prevent, detect, or remedy the same;

B. For a judicial declaration that the application of Government Code § 844.6(a)(2) to immunize COUNTY from liability under such circumstances violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution.

C. For a judicial declaration that the application of Government Code § 844.6(a)(2) under such circumstances violates the due process guarantee of the Fourteenth

Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution;

D. For costs of suit; and

E. For each other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANTS as follows:

FOR ALL CAUSES OF ACTION

A. For past, present, and future general damages in an amount to be determined at trial;

B. For special damages, including past and future hospital, medical, professional, and incidental expenses in excess of the jurisdictional minimum of this Court according to proof;

C. For costs of suit herein;

D. For exemplary damages against only INDIVIDUAL DEFENDANTS, et al.

E. For civil penalties pursuant to Civil Code section 52(b)(2)

F. For attorney's fees pursuant to Civil Code section 52.1

G. For such other and further relief as the Court may deem just and proper.

Date: October 6, 2026

STINAR LANNEN, PLLC

By:____________________________

JORDAN M. JONES, Esq.
*Counsel for Plaintiff*

PARKER STINAR, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this action be determined by trial by jury.

Date: October 6, 2026

STINAR LANNEN, PLLC

By: ______________________________

JORDAN M. JONES, Esq.
*Counsel for Plaintiff*

PARKER STINAR, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiff*

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Kern
By: Javen Silva
Deputy Clerk
**10/14/2026**

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
COUNTY OF KERN, a public entity; DOES 1-100, individuals

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
JOHN J.W. DOE, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
***(El nombre y dirección de la corte es):*** Metropolitan Division Justice Building
1215 Truxtun Avenue, Bakersfield, CA 93301

CASE NUMBER:
*(Número del Caso):* 26CUB04056

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
***(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):***
Jordan Jones, Esq., 360 E. 2nd St., Ste 820, Los Angeles, CA 90012; Tel: (213) 993-0360

DATE: *(Fecha)* 10/14/2026 Tara Leal Clerk, by *(Secretario)* Javen Silva , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: COUNTY OF KERN, a public entity
   under: ☐ CCP 416.10 (corporation)
   ☐ CCP 416.20 (defunct corporation)
   ☐ CCP 416.40 (association or partnership)
   ☒ other *(specify)*: 416.50 (public entity)
   ☐ CCP 416.60 (minor)
   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.90 (authorized person)
4. ☐ by personal delivery on *(date)*:

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF FRESNO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 1684 W. Shaw Avenue, Fresno, CA 93711.

On November 20, 2026, I served true copies of the following document(s) described as **NOTICE TO REMOVAL OF ACTION FOR FEDERAL QUESTION UNDER U.S.C. SECTION 1441 AND DEMAND FOR JURY TRIAL** on the interested parties in this action as follows:

**Counsel for Plaintiff:**
Jordan M. Jones, Esq.
Stinar Lannen, PLLC
360 E 2nd St., Suite 820
Los Angeles, CA 90012
Tel: (213)993-0360
Email: Jordan@StinarLannenLaw.com

_____**By Mail:** I enclosed said document(s) in a sealed envelope or package addressed to the persons at the address listed on the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day the correspondence is placed from collection and mailing it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully pre-paid.

__X__ **By E-Mail or Electronic Transmission**: Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 20, 2026, at Fresno, California.

Nancy Briseno